UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELO T. G.,[1] | Case No. 2:24-cv-02744 ADS |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| FRANK BISIGNANO, Commissioner of Social Security,[2] | |
| Defendant. | |

I.  **INTRODUCTION**

Plaintiff ("Plaintiff") challenges Defendant Frank Bisignano, Commissioner of Social Security's (hereinafter "Commissioner" or "Defendant") denial of his application for disability insurance benefits ("DIB").  Plaintiff contends that the Administrative Law

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.
[2] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted for Martin O'Malley as the Defendant.

Judge failed to properly consider his mental impairments and the medical opinion evidence. (Dkt. No. 14 at 3-9.) For the reasons stated below, the decision of the Commissioner is affirmed, and this matter is dismissed with prejudice.

II. **FACTS RELEVANT TO THE APPEAL**

A review of the entire record reflects certain facts relevant to this appeal. Plaintiff has past work experience in a composite job that combined the responsibilities of a president and a sales representative. (Dkt. No. 9, Administrative Record ("AR") 241, 1109.)

Plaintiff alleged that he suffers from a spinal fluid leak, headaches, blurred vision, dizziness, low back pain, memory problems, sensitivity to light, heat, and dehydration, body soreness, joint pain, confusion, frustration, impatience, tingling fingers, and difficulty sleeping, focusing, reading, writing, concentrating, and communicating. (AR 259, 282-83, 1131-32.) Plaintiff claimed that he is allowed to lift a maximum of 20 pounds. (AR 284.)

Plaintiff was described as a very active individual and engaged in activities such as mountain biking, skateboarding, and waterskiing. (AR 109, 343-44, 610, 615, 644.)

III. **PROCEEDINGS BELOW**

A. **Procedural History**

Plaintiff filed his application for DIB on April 4, 2018, alleging disability beginning on April 3, 2017. (AR 80, 241-47.) Plaintiff's application was denied initially on May 11, 2018. (AR 149-53.) Thereafter, Plaintiff filed a written request for hearing. (AR 154-55.) A hearing was held before Administrative Law Judge Sally C. Reason (the "ALJ") on April 6, 2020. (AR 94-135.) Plaintiff, represented by counsel, appeared and testified at the hearing, as did a medical expert and vocational expert. (Id.) On

1   April 14, 2020, the ALJ issued a decision concluding that Plaintiff was not disabled
2   within the meaning of the Social Security Act from April 3, 2017, the alleged onset date,
3   through December 31, 2018, the date last insured. (AR 80-90.) The Appeals Council
4   denied review on September 23, 2020. (AR 1-7.)

5       On November 20, 2020, Plaintiff filed a complaint in District Court challenging
6   the ALJ's decision denying benefits. (AR 1167-68.) Pursuant to the parties' joint
7   stipulation, the District Court issued an order of remand and judgment on
8   November 30, 2021. (AR 1171-76.) The Appeals Council then vacated the ALJ's decision
9   and remanded the case to the ALJ. (AR 1177-82.)

10       A telephone hearing was held before the ALJ on January 30, 2023. (AR 1114-42.)
11   Plaintiff, represented by counsel, appeared and testified at the hearing, as did a medical
12   expert and a vocational expert. (Id.) On February 16, 2023, the ALJ issued a decision
13   (the "Decision") concluding that Plaintiff was not disabled within the meaning of the
14   Social Security Act from April 3, 2017, through December 31, 2018. (AR 1097-1109.)

15       Plaintiff filed this action in District Court on April 4, 2024. (Dkt. No. 1.) On
16   June 4, 2024, Defendant filed an Answer, as well as a copy of the Certified
17   Administrative Record. (Dkt. No. 9.) Plaintiff filed an Opening Brief (Dkt. No. 14) on
18   September 5, 2024, and Defendant filed a Responsive Brief (Dkt. No. 16) on
19   October 1, 2024. The case is ready for decision.[3]

20   **B. <u>Summary of ALJ Decision After Hearing</u>**

21   In the Decision (AR 1097-1109), the ALJ followed the required five-step sequential

---

[3] The parties consent to proceed before a United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), including for entry of final Judgment. (Dkt. Nos. 6, 7.)

evaluation process to assess whether Plaintiff was disabled under the Social Security Act.[4]  See 20 C.F.R. § 404.1520(a).

The ALJ determined Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018, and at **step one**, the ALJ found Plaintiff had not been engaged in substantial gainful activity since April 3, 2017, the alleged onset date.  (AR 1099.)  At **step two**, the ALJ found that Plaintiff had the following severe impairments: CSF (cerebrospinal fluid) leak repair status post laminectomy and dural patch surgeries; degenerative joint disease of the right knee status post fractures, arthroscopic repair, and knee replacement; and a history of right drop foot since age 19, headaches, and dizziness.  (AR 1099-1100.)  At **step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings").  (AR 1102.)  The ALJ found that Plaintiff had the residual functional capacity[5] ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b) but with the following limitations: "[N]o crawling and no work around hazards such as ladder, heights, and heavy, moving machinery."  (AR 1103.)  At **step**

---

[4] The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled: Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.  Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.  Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.  Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.  Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.  See 20 C.F.R. § 404.1520.

[5] An RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See 20 C.F.R. § 404.1545(a)(1).

**four**, the ALJ found Plaintiff was able to perform his past relevant work, which was a composite job that combined the responsibilities of a president and a sales representative of advertising.  (AR 1109.)  Accordingly, the ALJ determined that Plaintiff was not disabled from April 3, 2017, the alleged onset date, through December 31, 2018, the date last insured.  (Id.)

## IV. ANALYSIS

### A. Issues on Appeal

Plaintiff raises the following issues: (1) whether the ALJ properly considered Plaintiff's mental impairments; and (2) whether the ALJ properly considered the medical opinion evidence.  (Dkt. No. 14 at 3-9.)

### B. Standard of Review

A United States District Court may review the Commissioner's decision to deny benefits pursuant to 42 U.S.C. § 405(g).  The District Court is not a trier of the facts but is confined to ascertaining by the record before it if the Commissioner's decision is based upon substantial evidence.  See Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (District Court's review is limited to only grounds relied upon by ALJ) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)).  A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied.  See Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended).  An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific

quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." Ryan v. Comm'r, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). However, the Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citation omitted).

Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless, that is, if it is "'inconsequential to the ultimate nondisability determination,'" or if "'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended) (citation omitted); Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012), superseded by regulation on other grounds as stated in Smith v. Kijakazi, 14 F.4th 1108, 1111 (9th Cir. 2021).

  **C.** **The ALJ Properly Evaluated Plaintiff's Mental Impairments**

    **1.** **Psychiatric Review Technique**

At step two of a disability determination, "an ALJ must determine whether the claimant has a medically severe impairment or combination of impairments" by "follow[ing] a special psychiatric review technique":

6

> Specifically, the reviewer must determine whether an applicant has a medically determinable mental impairment, [20 C.F.R.] § 404.1520a(b), rate the degree of functional limitation for four functional areas, id. § 404.1520a(c), determine the severity of the mental impairment (in part based on the degree of functional limitation), id. § 404.1520a(c)(1), and then, if the impairment is severe, proceed to step three of the disability analysis to determine if the impairment meets or equals a specific listed mental disorder, id. § 404.1520a(c)(2).

Keyser v. Comm'r of Soc. Sec. Admin., 648 F.3d 721, 725 (9th Cir. 2011). The regulations require ALJs to document application of the special technique in the written decisions. See 20 C.F.R. § 404.1520a(e). Nevertheless, the obligation to follow the technique is triggered only if the claimant has presented a "colorable claim of mental impairment." Keyser, 648 F.3d at 725 (citation omitted)).

Plaintiff argues that because he presented a colorable claim of mental impairment, the ALJ was required to follow the psychiatric review technique but failed to do so. (Dkt. No. 14 at 4, 6.) In response, Defendant argues that the ALJ properly applied the psychiatric review technique to evaluate the severity of Plaintiff's mental impairments. (Dkt. No. 16 at 6, 8-9.) The Court agrees with Defendant.

Over multiple paragraphs of the Decision, the ALJ applied the special technique by identifying Plaintiff's medically determinable mental impairments and documenting specific findings as to the degree of Plaintiff's limitations in each of the four functional areas. (AR 1101-02); see Keyser, 648 F.3d at 726. The ALJ decided, "The claimant's medically determinable mental impairments of anxiety, depression, and cognitive issues, considered singly and in combination, did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and were therefore nonsevere." (AR 1101.) The ALJ evaluated the level of functioning in the four functional areas, as required, and found no more than "mild limitations" or "no

1  limitations." (AR 1102.) Thus, the ALJ properly documented application of the
2  psychiatric review technique in the Decision in determining that Plaintiff's mental
3  impairments were not severe.[6] (Id.); 20 C.F.R. § 404.1520a.

### 2. The ALJ Did Not Err in Determining Plaintiff's RFC

Plaintiff contends the ALJ's RFC assessment fails to account for his memory and concentration limitations. (Dkt. No. 14 at 4-5.) According to Plaintiff, the ALJ should have ordered a consultative examination with a psychologist because the record is "undeveloped" regarding his mental impairments. (Id. at 5-6.)

"[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015). The ALJ must consider all the relevant evidence, but the RFC determination need not precisely reflect a specific medical opinion. See 20 C.F.R.§ 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."). "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

Here, Plaintiff has failed to meet his burden of demonstrating that the RFC is insufficiently restrictive. See 20 C.F.R. § 404.1512(a); Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020) ("The burden of proof is on the claimant at steps one through four."). In determining Plaintiff's RFC, the ALJ carefully analyzed the relevant evidence in the record, including the medical opinion evidence. (AR 1101-09.) As discussed, with

---

[6] To the extent Plaintiff asserts that the Decision is "unclear whether the ALJ found [his] mental impairment non-severe as she failed to follow the special psychiatric review technique," (Dkt. No. 14 at 6), his argument is belied by the record (AR 1101-02).

respect to Plaintiff's alleged mental impairments, the ALJ determined Plaintiff had no limitations in functioning. (AR 1101-02.) As to memory, the ALJ found,

> The first functional area is understanding, remembering or applying information. In this area, the claimant had no limitation. There is one note in 2019, following the date last insured, that indicated the claimant recalled 1 out of 3 objects and was delayed in his response. He could not backward spell his name. Nevertheless, he was alert and cooperative. He was oriented to month with a cue and mixed up the day. (Exhibit 11F). Even subsequent to this, the claimant continued to deny confusion, deny difficulty with concentration, deny focal weakness, and deny numbness. He exhibited a normal mood and affect with normal behavior. He was alert and oriented times three. The claimant has also refused consultations or treatment for any alleged cognitive or mental health issues. (Exhibit 14F/5-6).

(AR 1101.) As to concentrating, the ALJ found,

> The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant had no limitation. The record has consistently noted the claimant as being alert and oriented times three with normal recent and remote memory, normal attention span and concentration, normal language, and normal fund of knowledge. He has denied any depression, anxiety, memory changes, or hallucinations. (Exhibit 3F; 7F; 8F/1; 10F/24). He retained sufficient concentration to prepare meals, perform household tasks, drive, travel alone, shop in stores, care for pets, and engage actively in sports. (Exhibit 9E).

(AR 1102.) The ALJ cited the unremarkable psychiatric findings on examination. (AR 1100-02, 351, 607, 611, 613.) While Plaintiff reported in July 2018 that he had a "lack of focus," examination records during the relevant period reflected normal recent and remote memory, attention span, and concentration. (AR 1102, 607, 611, 613.) Further, although Plaintiff's treating physician, Dr. Stokol, assessed Plaintiff with significant limitations, the ALJ properly found his opinion "highly unpersuasive," as discussed in detail below. (AR 1105.)

Plaintiff contends the ALJ should have developed the record further by ordering a consultative psychological examination to evaluate his concentration limitations. (Dkt. No. 14 at 6.) However, "[a]n ALJ's duty to develop the record further is triggered

9

only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes, 276 F.3d at 459-60. As discussed, the ALJ reasonably concluded that Plaintiff's medically determinable mental impairments did not impact his functional abilities. (AR 113, 1101-02, 1108.) The ALJ also noted there were no records of mental treatment before or after the date last insured. (AR 1101.) Although Plaintiff points out that "it is a common phenomenon that individuals with mental impairments do not seek treatment," there is no indication in this case that any mental impairment prevented Plaintiff from seeking treatment. Rather, as the ALJ noted, Dr. Stokol opined in an April 2018 neurological medical statement that Plaintiff did not exhibit any signs of a mental impairment. (AR 1105, 600.) Plaintiff has failed to show that the ALJ had a duty to further develop the record.

Plaintiff additionally argues that the ALJ should have adjourned the second administrative hearing, ordered a neurocognitive evaluation, and resumed the hearing after Plaintiff underwent testing. (Dkt. No. 14 at 8.) Plaintiff contends that a neurocognitive evaluation was necessary because the non-examining medical expert, Dr. Cohen, "could not render an opinion" about Plaintiff's medically determinable mental impairments "without this testing." (Id.)

Plaintiff's argument lacks merit. Dr. Cohen testified before the ALJ that Plaintiff's mental status examination was within normal limits and there was no evidence of any functional limitations. (AR 1119-20.) While Dr. Cohen indicated that a neurocognitive evaluation could provide additional information, he repeatedly noted that Plaintiff had refused to undergo such testing. (AR 828, 1101, 1107, 1120.) Although Plaintiff notes that such evaluations can be very expensive, there is no evidence that he declined neurocognitive testing due to expense. (Dkt. No. 14 at 8; AR 828 ("[Plaintiff]

refuses any medication and declines any further testing unless a definitive explanation and management would be apparent.").) Under these circumstances, no further development of the record was necessary. See Mayes, 276 F.3d at 459-60.

### D. Medical Opinion Evidence

Plaintiff contends that the ALJ failed to articulate "specific and legitimate" reasons for rejecting Dr. Stokol's opinion. (Dkt. No. 14 at 9.) Plaintiff asserts that the unfavorable disability determination was improperly based on his "former active lifestyle." (Dkt. No. 14 at 8.)

#### 1. Evaluating Medical Opinion Evidence

For claims filed on or after March 27, 2017, such as Plaintiff's claim here, the ALJ is not required to give deference to any medical opinion, including treating source opinions. See 20 C.F.R. § 404.1520c; Woods v. Kijakazi, 32 F.4th 785, 792 (9th Cir. 2022). Instead, the ALJ evaluates the persuasiveness of medical opinions based on several factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including the length of treatment, frequency of examinations, purpose of treatment, extent of treatment, whether the medical source examined the claimant); (4) the medical source's specialty; and (5) "other" factors. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors are supportability and consistency. See 20 C.F.R. § 404.1520c(b)(2). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant … objective medical evidence.'" Woods, 32 F.4th at 791-792 (quoting 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent … with the evidence from other medical sources and nonmedical sources in the claim.'" Id. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). The Ninth Circuit has clarified that "under the new regulations, an

11

ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." Id.

Ninth Circuit case law preceding the new regulations afforded deference to the medical opinions of treating and examining physicians. Prior to the current regulations, the Ninth Circuit required ALJs to provide clear and convincing or specific and legitimate reasons for rejecting the medical opinions of treating or examining physicians. See id. at 789. These standards for evaluating medical opinion evidence no longer apply given the new regulations. Id. ("Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions is [ ] incompatible with the revised regulations.") (internal citation omitted).

### 2. Dr. Stokol's Assessments

In April 2018, Dr. Stokol completed medical source statements indicating that Plaintiff did not exhibit any signs or symptoms of a mental impairment but suffered from low pressure headaches and was "very symptomatic" from a CSF leak since 2014, despite corrective surgery. The ALJ's opinion summarized further,

> Dr. Stokol continued to note there was no disturbance of speech, no expressive or receptive aphasia, no reflex abnormalities, and no tremor or weakness of the extremities. He wrote "No" or "N/A" in response to whether the claimant had any loss in the ability to use his hands, experienced an impairment in gait, required an assistive device, had sensory or motor abnormalities, or exhibited signs of a mental impairment. (Exhibit 6F).

(AR 1105, 598, 600.) Other records reflect Dr. Stokol opined, in relevant part, that Plaintiff could occasionally lift a maximum of less than five pounds, stand and/or walk less than two hours in an eight-hour workday, and occasionally reach and handle. (AR 601-02.) In a January 2020 letter, Dr. Stokol indicated that Plaintiff had symptoms

12

that were severe enough to interfere with his attention and concentration frequently (since at least April 3, 2017), would need to take unscheduled breaks for at least 15 minutes, every one to two hours (since April 3, 2017), and would miss or be late for work more than three times a month. (AR 618-19, 1108.)

The ALJ found that Dr. Stokol's opinion assessing Plaintiff's limitations was "highly unpersuasive," as it was "highly inconsistent" with Dr. Stokol's own treatment notes and inconsistent with Plaintiff's highly active lifestyle and mild clinical findings. (AR 1105, 1108.)

### 3. Analysis

Substantial evidence supports the ALJ's consideration of Dr. Stokol's opinion. First, Plaintiff's argument that the ALJ rejected Dr. Stokol's opinion without providing "specific and legitimate" reasons fails, as it is based on the incorrect standard. (Dkt. No. 9.) As discussed, the evaluation of medical opinion evidence is governed by the new regulations because Plaintiff applied for benefits after March 27, 2017. See 20 C.F.R. § 404.1520c; Woods, 32 F.4th at 792.

Second, the ALJ properly determined that Dr. Stokol's opinion was not persuasive. (AR 1105, 1108.) As to the supportability factor, the ALJ noted that Dr. Stokol's opinion was inconsistent with his own treatment notes. (AR 1105, 1108.) When asked to identify Plaintiff's symptoms in the April 2018 medical source statements, Dr. Stokol indicated "No" or wrote "N/A," despite describing Plaintiff as very symptomatic from a CSF leak. (AR 598-602, 1105.) The ALJ also noted that Dr. Sokol's assessments were not supported by objective findings, as reflected in his treatment notes. (AR 1105, 1108.) During a March 2018 examination with Dr. Stokol, Plaintiff complained that he was "not fixed" but admitted that he lifted a 55-pound bag of dog food, walked on sand,

used a recumbent bicycle, rode a skateboard in a "pipe," denied falls, and took no medications or supplements. (AR 610.) Dr. Stokol reported that Plaintiff's neurological examination findings were within normal limits and there were no CSF leak features. (AR 610-11, 1105.) Plaintiff was advised to avoid activities involving straining, impact, handstands, headstands, and trunk twisting. (AR 610-11, 1105.) During a July 2018 examination with Dr. Stokol, Plaintiff reported that he had stopped intense activities, quit work, and was suffering from numerous symptoms, including blurred vision, tingling, frustration, difficulty putting a sentence together, and lack of focus. (AR 612.) However, Dr. Stokol reported that the cause of Plaintiff's symptoms and relevance of a CSF leak was uncertain and the neurological examination findings were largely within normal limits. (AR 612-13, 1105.)

As to the consistency factor, the ALJ reasonably concluded that Dr. Stokol's assessments were inconsistent with Plaintiff's very active lifestyle. (AR 1105, 1108.) In February 2017, Dr. Stokol reported that Plaintiff was "extremely athletic and often engage[d] in extreme activity." (AR 344, 1104.) As noted, Plaintiff admitted in March 2018 that he was able to lift a 55-pound bag of dog food, ride a recumbent bicycle, and skateboard. (AR 610, 1105.) Although Plaintiff reported that he quit mountain biking, kayaking, and skateboarding in July 2018 (AR 612), an examining physician (Dr. Bajaj) reported in January 2019 that Plaintiff was an avid mountain biker and continued to skateboard, despite complaints of pain, numbness, headaches, and vertigo (AR 615, 1106). Records from July 2019 show that Plaintiff fractured his tibia while waterskiing. (AR 644, 1102.) The ALJ also found that Dr. Stokol's opinion was inconsistent with the mild or normal clinical findings on examination and the fact that there were no records of treatment for the remainder of 2018. (AR 349-52, 393-96, 461, 479, 1104, 1106-08.)

Thus, the ALJ properly identified inconsistencies between Dr. Stokols's opinion and other medical record evidence. (Dkt. No. 14 at 8.)

Accordingly, substantial evidence supports the ALJ's evaluation of Dr. Stokol's opinion. See 20 C.F.R. § 404.1520c(c); Woods, 32 F.4th at 791-92.

## V.   CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED, and the action is DISMISSED with prejudice. Judgment shall be entered accordingly.

DATED: September 15, 2025

                                              /s/ Autumn D. Spaeth
THE HONORABLE AUTUMN D. SPAETH
United States Magistrate Judge